UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHANIE L. V.

                Plaintiff,

v.                                                                                                1:20-CV-1744
                                                                                                  (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| BRANDI CHRSTINE SMITH, ESQ.<br>  105 Delmar Mitchell Dr.<br>  Buffalo, NY 14204 | |
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | KENNETH HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | NAHID SOROOSHYARI, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 12.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

I.    **RELEVANT BACKGROUND**

    A.    **Factual Background**

Plaintiff was born in 1975. (T. 85.) She completed high school. (T. 203.) Generally, Plaintiff's alleged disability consists of cervical herniations, lumbar herniations post fusion surgery, nerve damage, and migraine headaches. (T. 86.) Her alleged disability onset date is April 17, 2015. (T. 85.) Her date last insured is December 31, 2020. (*Id.*) Her past relevant work consists of assistant manager, medical biller, and receptionist. (T. 207.)

    B.    **Procedural History**

On December 11, 2017, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 86.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On November 21, 2019, Plaintiff appeared before the ALJ, Mary Mattimore. (T. 33-84.) On January 17, 2020, ALJ Mattimore issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 7-27.) On October 2, 2020, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

    C.    **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 12-22.) First, the ALJ found Plaintiff met the insured status

requirements through December 31, 2020, and Plaintiff had engaged in substantial gainful activity since June 2019; however, there has been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity.  (T. 12.)  Second, the ALJ found Plaintiff had the severe impairments of migraines; occipital neuralgia; cervical disc displacement; cervical disc herniations and bulges; intervertebral disc disorders with radiculopathy; cervical radiculopathy; cervicalgia; myofascial pain; chronic pain; status post anterior interbody fusion on January 19, 2016; and status post cervical arthrodesis surgery September 10, 2018.  (*Id.*)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 14.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a); except:

> she can occasionally stoop.  She cannot climb ladders, ropes, or scaffolds.  She can occasionally reach overhead bilaterally.  She cannot work with vibration, hazardous machines, or unprotected heights.  She can frequently finger, handle, and feel with her left dominant hand but no forceful handling such as using a screwdriver or hammer.  She can perform simple, routine work and make simple workplace decisions.

(T. 15.)[1]  Fifth, the ALJ determined Plaintiff unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 20-22.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

Plaintiff makes two arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly evaluate a treating source opinion.  (Dkt. No. 9 at 10-16.)  Second, and lastly, Plaintiff argues the ALJ's mental RFC determination was not supported by substantial evidence.  (*Id.* at 16-19.)  Plaintiff also filed a reply in which she deemed no reply necessary.  (Dkt. No. 11.)

**B.     Defendant's Arguments**

In response, Defendant makes two arguments.  First, Defendant argues the ALJ's physical RFC is supported by substantial evidence.  (Dkt. No. 10 at 8-19.)  Second, and lastly, Defendant argues the ALJ's mental RFC finding is supported by substantial evidence.  (*Id.* at 19-24.)

**III.    RELEVANT LEGAL STANDARD**

**B.     Standard of Review**

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The "substantial evidence" standard "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[I]t is . . . a very deferential standard of review - even more so than the 'clearly erroneous' standard."  *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).  In particular, it requires deference "to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).  It is not the Court's "function to determine *de novo* whether a plaintiff is disabled."  *Brault,* 683 F.3d. at 447.  "In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record,

including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would have to conclude otherwise.' " *Brault,* 683 F.3d at 448. The Court "require[s] that the crucial factors in any determination be set forth with sufficient specificity to enable [the reviewing Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (alterations and internal quotation marks omitted).

C. **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022).

## IV. ANALYSIS

### A. Opinion of Franco Vigna, M.D.

Plaintiff argues the ALJ rejected the opinions of Plaintiff's treating neurosurgeon, Dr. Vigna, "for insufficient reasons that did not adhere to the new regulations addressing opinion evidence." (Dkt. No. 9 at 10.)  Specifically, Plaintiff asserts the ALJ failed to adequately explain how she considered the supportability and consistency factors under 20 C.F.R. § 404.1520c(b)(2).  (*Id.* at 13.)  For the reasons outlined below, the ALJ properly evaluated Dr. Vigna's opinions, and her determination was supported by substantial evidence.

Under 20 C.F.R. § 404.1520c the ALJ must articulate how he or she considered certain factors in assessing medical opinions and prior administrative findings.  *See* 20 C.F.R. § 404.1520c(a)-(c)[2].  The regulatory factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors.  *Id.* § 404.1520c(c).  An ALJ must explain his or her approach with respect to the first two factors when considering a medical opinion but need not expound on the remaining three.  *Id.* § 404.1520c(b).  The ALJ is tasked with analyzing medical opinions at the source-level, meaning that the ALJ need not discuss each and every medical opinion in the record, and may apply the factors holistically to a single medical source.  *Id.* § 404.1520c(b)(1).

---

[2]   A prior administrative medical finding is a finding, other than the ultimate determination about whether a plaintiff is disabled, about a medical issue made by the SSA's Federal and State agency medical and psychological consultants at a prior level of review in a plaintiff's current claim based on their review of the evidence in plaintiff's case record.  20 C.F.R. § 404.1513(a)(5).

The first factor – supportability - looks at how well a medical source supported and explained his/her opinions about the patient. The strength of a medical opinion is increased as the relevance of the objective medical evidence and explanations increase.  20 C.F.R. § 404.1520c(c)(1).  The second factor - consistency - looks at whether a medical provider's findings and opinions are consistent with those of other medical providers and medical evidence. The more consistent a particular medical source opinion is with other evidence in the medical record, the stronger that medical opinion becomes.  *Id.* § 404.1520c(c)(2).

In May 2018, Dr. Vigna opined:

> [Plaintiff] continues to remain disabled in that she is unable to sit more than 20 minutes without having significant cervical pain accompanied by headaches and left arm pain. She also has difficulty utilizing her left hand and finds herself dropping items. She cannot lift more than 10 pounds and has difficulty turning her head and bending over[.]

(T. 638.)

In October 2019, Dr. Vigna completed an affidavit summarizing his treatment and objective findings since initial treatment of Plaintiff.  (T. 621-630.)  He stated:

> Since April 17, 2015, it is my professional opinion that [Plaintiff] would only lift and carry occasionally up to 20 pounds, and frequently less than 10 pounds. She would have been limited to sitting 30 minutes at a time, standing for 30 minutes, and walking for 20 minutes. In an 8-hour work day she could work up to 4 hours maximum due to pain.
>
> Since April 17, 2015, [Plaintiff] was also limited in her ability to use her left hand for grasping and handling of objects to an occasional basis due to numbness and tingling. She could not use a keyboard or perform any manual dexterity with the left hand for more than a few hours each day due to symptoms from radiculopathy.
>
> It is my opinion, within a reasonable degree of medical certainty, that the cervical and lumbar spine injuries caused by the April 15, 2015 accident have permanently disabled [Plaintiff], have restricted her ability to work, and have resulted in loss of range of motion, disc pathology, radiculopathy, and

>  pain. Based on [Plaintiff's] reported symptoms, it is my opinion that the chronic daily pain which prevents [Plaintiff] from carrying on with her normal daily tasks such as working at her job, carrying and caring for her child, cooking, and cleaning her house would be considered a natural and expected medical consequence of the injuries she sustained in the motor vehicle accident.

(T. 631-632.)

The ALJ summarized Dr. Vigna's 2018 and 2019 opinions and concluded both opinions were "partially persuasive." (T. 19, 20.) Regarding the 2018 opinion, the ALJ reasoned contrary to the opinion, Plaintiff reported improvement in symptoms after her September 2018 neck surgery and upper extremity strength had been consistently normal. (*Id.*) The ALJ stated she limited Plaintiff to frequent fingering, handling, and feeling with her left hand but no forceful handling. (*Id.*) The ALJ noted the opinion was "detailed;" however, his limitation to working four hours a day was "not entirely supported by the records in Exhibit 17." (T. 20.)[3] The ALJ further reasoned that Dr. Vigna's statements regarding the limited nature of Plaintiff's daily activities, Plaintiff "generally reported an independent ability to perform childcare, housework, personal care, and driving." (*Id.*) Lastly, the ALJ reasoned by October 2019 Plaintiff was cleared for work and performing substantial gainful activity. (*Id.*) The ALJ also noted statements on issues reserved to the Commissioner, such as Plaintiff's ultimate disability status, are inherently neither valuable nor persuasive. (T. 19.)

Plaintiff asserts the ALJ erred in assessing the supportability and consistency factors because Dr. Vigna's opinion was supported by and consistent with other medical evidence in the record. (Dkt. No. 9 at 14-14.) Plaintiff proceeds to list evidence in the

---

[3] Exhibit 17 contains Dr. Vigna's office treatment records from April 27, 2018 through October 11, 2019. (T. 633-684.)

record of positive objective findings which she asserts the ALJ "never" considered. (*Id.* at 14.) Contrary to Plaintiff's assertion, the ALJ specifically considered the evidence Plaintiff argues she ignored. (Compare Dkt. No. 9 at 13-14 with T. 16-17.)

As an initial matter, the ALJ's RFC determination that Plaintiff could perform the exertional demands of sedentary work is more restrictive than Dr. Vigna's opinion Plaintiff retained the ability to occasionally lift and carry up to 20 pounds and frequently less than 10 pounds. *See Riederer v. Comm'r of Soc. Sec.*, 464 F. Supp. 3d 499, 505-506 (W.D.N.Y. 2020) (remand generally not required where ALJ assessed a more restrictive RFC finding than provided in opinion evidence).

In so far as Plaintiff argues the evidence supports her assertion of greater limitations, under the substantial evidence standard it is not enough for Plaintiff to merely argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusion based on the evidence in the record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position). Further, even if the ALJ had not discussed the evidence, her rationale is clear from her decision. *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) ("An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision.")). Therefore, the ALJ discussed the evidence Plaintiff contends she ignored, and Plaintiff fails to show that no reasonable

factfinder could have reached the ALJ's conclusion.  *See Barrere v. Saul*, 857 F. App'x. 22, 24-25 (2d Cir. 2021) (where substantial evidence supports the plaintiff's account, but there is also substantial evidence from which the ALJ reasonably could have ruled against the plaintiff, the court must defer to the agency determination).

Plaintiff makes the related argument that relying on the objective findings is an improper bases for discounting Dr. Vigna's opinion because it would constitute the ALJ evaluating the opinion based on her lay interpretation of bare medical findings over the doctor's professional opinion.  (Dkt. No. 9 at 14.)  Plaintiff's argument is without merit.  Under 20 C.F.R. § 404.1520c(c)(1), ALJ's are tasked to consider how the "relevant the objective medical evidence and supporting explanations presented by a medical source" support the source's opinion.  In formulating Plaintiff's RFC, ALJ's are directed to consider "medical signs and laboratory findings."  SSR 96-8p.  Therefore, in considering the objective evidence in the record the ALJ was not improperly interpreting raw medical data, the ALJ was properly executing her duty to assess the supportability of Dr. Vigna's opinions.

In addition, and contrary to Plaintiff's assertions, the ALJ's remaining reasons for not adopting Dr. Vigna's statement that Plaintiff was limited to working four hours a day, were proper.  (Dkt. No. 9 at 15.)  The ALJ properly noted the limitation was not supported by treatment notations, Plaintiff's testimony she was independent in her activities of daily living, and had been cleared for work.  (T. 20.)  For example, Plaintiff regularly displayed full strength, normal muscle tone, and no instability in her upper extremities, despite complaints of pain and numbness in her arm.  (T. 17; citing T. 672, 682.)  Dr. Vigna also found Plaintiff regularly displayed normal gait and station.  (T. 17;

citing Tr. 682.)  Although Plaintiff expressed difficulty with daily activities at times, she also reported the ability to drive daily, do laundry, travel, do some yard work, care for her child, and manage her personal care.  (T. 51-53, 590, 593, 596.)  Therefore, the ALJ properly evaluated Dr. Vigna's opinion and substantial evidence supported the ALJ's determination.

### B.  Mental RFC Determination

Plaintiff argues the ALJ erred in her mental RFC determination because she found the administrative finding of consultative examiner, Janine Ippolito, Psy.D., "persuasive," but then found Plaintiff's mental impairments non-severe and did not include any of the doctor's limitations in the RFC.  (Dkt. No. 9 16-19.)  Specifically, Plaintiff asserts the ALJ's RFC determination for simple, unskilled work did not sufficiently account for Dr. Ippolito's moderate limitations interacting adequately with supervisors, coworkers, and the public and regulating emotions, controlling behavior, and maintaining well-being.  (*Id.* at 17-18.)  For the reasons outlined below, the ALJ properly assessed Plaintiff's mental RFC and her determination was supported by substantial evidence.

Dr. Ippolito examined Plaintiff and provided an administrative finding.  (T. 590-594.)  Dr. Ippolito opined Plaintiff was able to understand, remember, or apply simple directions and instructions, use reason and judgment to make work-related decisions, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, and demonstrate awareness of normal hazards and taking appropriate precautions with no evidence of limitations.  (T. 593.)  She opined Plaintiff could understand, remember or apply complex directions and instructions with mild

11

limitations.  (*Id.*)  She opined Plaintiff could interact adequately with supervisors, coworkers, and the public, sustain concentration and perform a task at a consistent pace, and regulate emotions, control behavior, and maintain well-being with moderate limitations.  (*Id.*)  Dr. Ippolito stated Plaintiff's psychiatric problems did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis.  (*Id.*)

In making his step two determination that Plaintiff did not have a severe mental impairment, the ALJ relied, in part, on Dr. Ippolito's administrative findings.  (T. 12-13.)  In her step four analysis, the ALJ found Dr. Ippolito's finding "persuasive," reasoning it was consistent with and supported by the normal mental status findings and lack of specialized mental health treatment.  (T. 19.)  The ALJ ultimately concluded Plaintiff could perform simple, routine, work and make simple workplace decisions.  (T. 15.)

Although Plaintiff argues the ALJ's RFC failed to account for Dr. Ippolito's moderate social limitations, moderate limitations in social functioning does not preclude the ability to perform unskilled work.  The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work.  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); see *Whipple v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress

12

environment).  Therefore, Plaintiff's assertion that the ALJ's mental RFC failed to account for Dr. Ippolito's moderate limitations fails.

The ALJ has the duty to evaluate conflicts in the evidence.  *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).  As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision.  *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).  As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Biestek,* 139 S. Ct. at 1154.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:     October 12, 2022

                                                              William B. Mitchell Carter
                                                              U.S. Magistrate Judge